This morning is number 15, 1947, Intellectual Ventures LLC against Ericsson Incorporated. Mr. Picard. You're busy this week. I am. It's always a pleasure to be here. Good morning, and may it please the Court. There are a number of errors in the Board's final written decision, including that it applied the patently distinct standard in deciding the anticipation issues and in shifting the burden to the patent owner on that same anticipation issue. Did they apply a standard or just use the language loosely? They did apply the standard, Your Honor. I think if you look to the seven factual findings that they recite at the end of their anticipation ruling, you'll see the repetition of the patently distinct language, and it's an essential finding in the Board's anticipation conclusion. What I'd like to focus my time today on are two other errors, though, and that is whether substantial evidence supports the Board's obviousness findings over the Rye reference and the copyright issues on Stadler. Cognizant of the fact that we need to win both on anticipation and on obviousness, I'd like to focus on what may appear to be the closer call, and I think that's the obviousness question. So if we look at the Board's decision with respect to Rye, we have argued that it lacked substantial evidence for two elements. First, the determining element, and second, the second security protocol element. If we looked to the determining element, the language of the claims requires that the base station determine that the first packet is targeted at the target device. On this point, the Board found that the Rye reference inherently discloses this element. If you look at A33 to A34, the Board said Erickson argues that the base station must make a determination that the packet is targeted at the end system in order to send the packet to the end system, concluding we agree with Erickson on this point. And I attract the argument that Erickson made in its reply papers, frankly, for the first time, which we submit would be a procedural error. But I think the salient point here is that when Erickson and the Board rested their determination on the must language, inherency, they set for themselves a very high burden. And Erickson did not present to the Board below expert testimony, for instance, that would have met the inherency standard, which requires excluding other probabilities and possibilities. And because this issue was presented for the first time in Erickson's reply, Intellectual Ventures didn't have an opportunity to put in rebuttal evidence on this point. Had it, it would have put in evidence showing, for example, that the base station didn't need to target or determine whether the first packet was targeted. It could simply have broadcast the first packet. But was it really a question of them raising it for the first time in a reply? Didn't they raise it in their petition? They did not raise inherency in their petition. But I think the more salient point is that the Board lacked the necessary evidence to make an inherency finding on this record. All that was present below was that disclosure, single sentence disclosure of Rye and Erickson's additional attorney argument. And even in its red brief here at page 44, Erickson again repeats that sort of syllogism saying it's just a matter of logic. It's not a matter of logic. Erickson's counsel's intuition do not count in terms of meeting the inherency requirement. And instead of truly rebutting that point in their papers, they try to shift the issue to one of claim construction and say that, well, the claim is met just because there's a transmission in the Rye base station. But that would read out the determining language of the claims. We submit that that was a reversible error sufficient in and of itself for this Court to set aside the Board's obviousness finding. Turning to the second security protocol. But why is it an error to shift to claim construction and then come up with a construction that was contrary to your position? I apologize. That was not clear. So the Board did not make a claim construction ruling below. They simply found inherency. Erickson in its- Did they really find inherency? I mean, the fact that they say it entails use of something, does that really mean- is that really an inherency? I think Your Honor may be confused. The entails language comes in for the second security protocol element. Right. The must language appears in the Board's finding that the determining step was disclosed in Rye. And the Board's language says Erickson argues that the base station must make a determination, and it agreed with Erickson. That's exactly the inherency test here. Well, is it inherency or common sense? Well, it is inherency, and common sense cannot meet the standard, especially when you have a relatively complicated disclosure that you have in Rye. Common sense would be inconsistent with this court's case law. They need to put in expert witness testimony that would exclude other possibilities, and they simply didn't do that. Turning to the second issue of whether Rye disclosed a second security protocol- You know, I know you want to spend your time on this issue, but don't you have an issue with respect to the Stadler reference? Isn't that a more straightforward problem for you in the sense that if the Board is correct across the Board on that, you're going to lose- Your Honor, we need to prevail both on the Iverson question and on Stadler, and I'm happy to turn to that. There were two errors in the Board's treatment of the copyright issues with respect to Stadler. First, the Board looked to the copyright line in the Stadler reference itself and found that that copyright line in and of itself established that the Stadler reference was publicly available before the critical date. We submit that that's not consistent with this court's case law. For example, in In re Lister, there is no evidence to support the public availability of Stadler in this case. If we don't agree with you, did you raise below the question of Stadler the time in 1998 when Stadler was published? After all, I believe your provisional application was filed in July 1998. Is that not raised? I think I understand Your Honor's question. So Stadler has a copyright- In other words, even if Stadler was a proper reference as of some time in 1998, maybe it was after the provisional application date. There was not an attempt to antedate or file the date, if you will. I think that answers Your Honor's question. Turning back to the copyright issue, as a matter of law, it's not sufficient to establish that Stadler was publicly available. If we look to In re Lister, there the facts show that even the registration of a copyrighted work wasn't enough. In that case, the work was deposited at the Copyright Office. And the Lister opinion concludes and says you need something more. And it kind of gives a road map for proponents of evidence like Erickson with the Stadler reference here. Could have gone out and gotten evidence about what the IEEE standard practices were in the 1998 time frame. It could have obtained a librarian's declaration and so on. They didn't do any of these things. And the law should not reward laziness, especially when we have at stake an important copyright with respect to intellectual ventures. Well, if you've got something like the IEEE, I mean, it's pretty well known what it does and what its audience is, right? Well, I think I want to be precise about this. It is well known what the IEEE does. I submit to you, Your Honor, that it is not well known what the IEEE's practices are with respect to assigning copyright dates and what kind of lag, if any, would attach to the actual public availability of particular references. Just keeping in mind, the IEEE publishes many different kinds of papers. And I don't think there's any evidence or an ability for this Court to take notice of how it – what its practices are with respect to publishing particular kinds of references, let alone the particular reference of Stadler. But on this point, it's an abuse of discretion review, is it not? Not on this point. It's an evidentiary principle. It is for the hearsay issues. It's an abuse of discretion. But the question whether the evidence, the copyright line of Stadler qualifies Stadler as prior art, that's a legal question with underlying factual determinations that are reviewed for substantial evidence. That's from the In re Lister case. So here, the only evidence is the copyright line. And the In re Lister directs the conclusion that that's not enough to establish that a paper was publicly available at the relevant time. As I said before, there's no librarian's declaration, no evidence that this was indexed and available before the relevant time period. In fact, the only evidence that Erickson put in was a web printout from 2013 to show that perhaps it was possible to find it in the 2013 time frame. I do want to turn next to the evidentiary issues. There's no dispute in this case. But just let me go back for a second. I mean Lister really was a totally unpublished manuscript, right? It's a very different factual scenario. I don't agree with that. So in Lister, you have the manuscript that was deposited at the Copyright Office. At some point, the Lexis and Westlaw databases indexed that paper. And the question there was when that happened. There was a two-year gap that was at issue. And I don't think the facts of Lister in terms of whether it was a publication is what really drove that decision, whether it was a manuscript versus a conference paper as we have here. The question is was there evidence in the record that a skilled artisan could have found that reference through reasonable efforts? And there's no evidence in this record that that's the case. Setting aside that issue, even if that evidence were sufficient, it's not admissible. There's no dispute here that the copyright line of the Stadler reference is hearsay. So the question resolves to whether an exception to that hearsay applies. And the board below found two applicable exceptions, the market report exception and the residual hearsay exception. Turning to the market report exception, the board erred in finding that applied. If you look to the language of- Why don't you go to the residual because I think that's the market report is your better argument. So we got that part. Thank you, Your Honor. What about the residual hearsay? I think the most salient point with the residual hearsay exception is the third element. This is Rule 807. That third element requires a finding showing that more probative evidence on the point for which the Stadler copyright line was offered couldn't be obtained through reasonable efforts. And here the board did two things. First, it didn't receive any evidence on that element. What it had was attorney argument by Erickson and the opposition to the motion to exclude. And the board just assumed that more probative evidence couldn't be found through reasonable efforts. There's no evidence about what those reasonable efforts might have been. And it went through, I think, frankly, a remarkable conclusion to say that a librarian's declaration would not have been more probative than the copyright line of the Stadler reference. So they don't meet that element. There also are no equivalent circumstantial guarantees of trustworthiness. The board essentially assumed that away in its analysis. And so there's two abuses of discretion there. First, we submit that the board's analysis with respect to the residual hearsay exception was a clearly erroneous legal conclusion. And its conclusions rested on a record that had no evidentiary basis whatsoever. Let's move back a little bit. Maybe I missed something. Why is this hearsay? It's a publication. The copyright line is hearsay because it was offered for the truth of the matter asserted. Every publication that is publication has a date on it. I don't think that's true. But there are many publications with dates on them. And if we are to take that date as truth, that it was published in the words of the board as of that date, then it's offered for the truth of the matter asserted. There's no dispute here that it was hearsay. Erickson has never taken that position in this appeal. Neither of the board's exceptions apply. Erickson offers a third alternative reason to allow the admission of this statement, the learned entreaties exception. And here again, if we look to the language of the rule. But let me go back to the residual hearsay exception because isn't it true that it has to be probative? It doesn't necessarily have to be the most probative, does it? The language of the rule is it has to be more probative. So it doesn't have to be the most probative. But more probative than something that you could get without unreasonable effort. Right. There is a reasonable effort limitation on that. So we submit that requiring a petitioner to go out and obtain something like a librarian's declaration, approaching the IEEE to find out what its typical practices were, for example, in the 1998 time period, that would not have been unreasonable. I think it's important to keep in mind the procedure here. When Erickson files its petition, Intellectual Ventures can object to its evidence. It did that here and included with that objection, it put Erickson on notice that the public accessibility and the hearsay questions were very much in play. And Erickson had an opportunity to get curative evidence to put that in the record and they simply didn't do so. They also have offered no evidence that would have been difficult for them to obtain a librarian's declaration. Assuming you're stuck with Stadler, what's your best argument that it doesn't anticipate? Stadler's, on the wireless segment of Stadler, remember we have a wired segment of the network. It's first security protocol for the first packet there. In Stadler's wireless segment, it creates new packets called WLP packets. And the evidence in the record is that those packets have different payloads than what's on the wired segment. So therefore, it's no longer applying a second protocol to quote the first packet. I'm into my rebuttal time. Yes, we'll save your full rebuttal. Let's hear from the other side. Thank you. Mr. Mattson.  Good morning. May it please the Court. I first want to clear up one thing about the filing date of the 674 patent. It's not entitled to its provisional date. It's only entitled to a filing date of July 1999. So there's no question over what month or what day the Stadler reference may have published. With respect to the Lister case, as far as the copyright goes, I think Judge O'Malley had it right that the Lister case doesn't have anything to do with the copyright date. And there, in fact, was actually Dr. Lister who had submitted his own manuscript to the Copyright Office because he thought that would protect his invention. And that's consistent with all the cases that Intellectual Ventures has cited in its briefs, which is these are all cases where you don't have a reputable third-party publisher independently publishing the work of the author, which is the situation we have here. It is the IEEE. It is trustworthy. And, in fact, its members that rely on IEEE publications are, in fact, the members of the scientific and technical community. Well, you agree that there's two different issues here. One is the admissibility under the evidentiary issue. But the second is whether or not it does show public availability. Right. As far as public availability goes, the date next to the copyright line is the first date of publication. That's what it's used for. And then next to that is the publisher's name. That's what the copyright date represents. And there's also the bibliographic information included with the Statler reference. And there's no dispute over authenticity. Everyone agrees, I think, that this is an article from the proceedings of the 1998 Military Communications Conference. And the date of the conference would also corroborate the copyright date. But the copyright date by itself here, this is a third-party publisher that's reputable, and people rely on these dates in the scientific and technical community to be able to ascribe the correct amount of significance to these publications. Would it have been so difficult to contact IEEE and actually get a declaration as to when it was published? Well, Your Honor, you might not be surprised to know that third parties rarely want to get involved in IPR proceedings or court proceedings. And even if you can get such a declaration, then there's going to be a deposition, and potentially, because that opens the door for the deposition. And I think here you have a case where the board is saying this is not reasonable to require a declaration from the IEEE, when the IEEE has already said in its copyright line that it was published in 1998, which leads into the hearsay issue. The board has – It won't surprise you to find that, speaking only for me and not for my colleagues, that I think that some of your hearsay arguments are not great. But your best argument has to do with the residual exception. But how do you deal with the prong that says it has to be more probative than alternative forms of evidence? Well, Your Honor, there's no better source to identify the date than the IEEE itself. If the IEEE says it was first published in 1998, then a librarian saying that it was published on a certain date isn't going to help you. Also, the board has to construe its own rules, which includes the Federal Rules of Evidence, to secure the just, speedy, and inexpensive resolution of every proceeding. So not only is this reviewed under an abuse of discretion standard, but I think also the board's own rules give it considerable leeway to determine what's reasonable and what's not in inter-parties review proceedings. The compilation may be, in Your Honor's opinion, that is more difficult, but this is an article from a compilation of, I think, at least 50 articles that went into the 1998 military communications proceedings. And it's also relied upon by the scientific and technical community, as the board pointed out. The board did not rely on the periodicals exception, Federal Rule of Evidence 803, paragraph 18, but that would also be applicable for similar reasons. The primary key to all the Federal Rule of Evidence 803 exceptions is the reliability of the evidence. It doesn't matter if the declarant's available or not. And in some respects, this is a rule of convenience. It says when the source is reliable, and that's the situation we have here, then you meet one of these hearsay exceptions. Now, of course, Intellectual Ventures has the opportunity to marshal their own evidence and try to discredit the facts supporting the date. They could attack the date if they wanted. Well, it's your burden to show that there was publicly available prior art. Right, right. The fact that this was published, I don't even think that's an issue. It's just a matter of when it was published. And if the IEEE says it's 1998 on the copyright date, then that's something you can take to the bank. Something you can take to the bank, is that what you said? It's reliable, and that's what the board said, not take to the bank. I don't think that's the legal standard. No, but reliability is. And we can trust the IEEE to put the publication date, the correct publication date, on its own publications. Okay, so assuming that you get past these basic issues and we're working with Stadler, the determining step is the point that I think your friend on the other side said he thought his best argument as it relates to Stadler. What's your response to that? Your Honor, determining was for the Rye-Davison combination. I think Counsel for Intellectual Ventures was talking about the packets, which I don't even believe that was an issue that they raised in their briefs. They appeared to have conceded this in the briefs, and they're trying to attack this issue on the technicality of the wrong burden of proof being applied, which is not the case here. There's a difference here than what you see in the Magnum Tools case where there's an improper burden shifting, and here you've got the board just pointing out that counterarguments are inadequate. So I think what Counsel for Intellectual Ventures was alluding to was the underlying issue on the burden of proof argument, which was whether the Stadler reference is transforming or processing first packets. And this was addressed in numbered findings of fact by the board. They're actually enumerated in the decision, and finding of fact number three was that the 674 patent itself describes in the specification transforming first packets before wireless transmission. Stadler, the prior reference of Stadler, transforms first packets before wireless transmission. And the question the board posed was how could 674 patent claims cover what's in its own specification and not in Stadler if they're doing the same thing in all relevant respects? But this underlying issue of the merits is not even an issue that's before the court here on appeal. It's more the technicality of whether the correct burden of proof was applied. Are you talking about his patently distinct language? Yes, Your Honor. The patently distinct term shows up twice in the board's opinion, once in analysis of what intellectual ventures experts said, and again in the numbered findings of fact. You could delete both of those sentences, and you would still have findings of fact sufficient to support a conclusion of anticipation. So it's pretty confusing for the board to use that language, wasn't it? I agree it's probably not the best choice of language, but like I said, you could just delete those sentences, and you'd still have substantial evidence to support a finding of anticipation. So it's your position that what the board was really saying is that from a technological standpoint, they weren't different in any relevant or material way. Right. They were talking about the difference between what Stadler teaches and what's disclosed in the 674 patent specification. The claims of the 674 patent are broad enough. It doesn't even get into that level of detail. But this was purely to address an argument that Intellectual Ventures had raised in its patent response and then was disposed of with this analysis of whether the 674 patent was really just doing the same thing that Stadler was. An Intellectual Ventures expert was confronted with this at his deposition, and I believe most of the pages in the joint appendix are addressed to this exchange. And when he was asked to talk about Figure 12b and whether that was similar to Stadler, he said he didn't spend much time looking at that, no. And then he was asked about whether there was one-to-one correspondence between the incoming and outgoing packets in the 674 patent. He wouldn't answer any of these questions, and this line of questioning culminates with him not even agreeing to say whether or not Claim 1 reads on Figure 17 of the patent, which is the figure that both parties relied on in describing the 674 invention in its briefs. Talk to me about whether the board erred in finding that Stadler anticipated the dependent claims because I was a little confused about something relating to the two different encryption algorithms. Is it undisputed that IPSEC is not bulk encryption? I believe so, Your Honor, and this is what Dr. Newman, the expert for Erickson, said. He said these two different encryption algorithms, and if you look at the WEP description that's in the joint appendix, it's actually specifically made for wireless communications. He did say that bulk encryption was preferred for wireless communications, but the other piece of it is the part that I was struggling to find, which is a clear statement that IPSEC is not bulk encryption. Right, and I just jumped ahead to RAI 2 with WEP. So, yeah, this is the distinction between IPSEC and bulk encryption. IPSEC encryption is occurring on a packet-by-packet basis. It's a tunneling protocol that's used to encrypt IP packets. Bulk encryption, and Stadler even describes this, is where you're encrypting all of the communications connections, all the TCP connections in parallel. Okay, so the answer to my question, is it undisputed that IPSEC is not bulk encryption? You would say that answer would be yes. Yes, and Dr. Michalski was asked about this at his deposition, and he, again, reiterated that they were different. In his deposition testimony, he said that IPSEC encrypts on a packet-by-packet basis. And there's two different terms. The encryption technologies are being used on two different links. There's no question that they are different algorithms, and there's no evidence to the contrary. Intellectual Ventures is just resting its argument on the fact that we haven't disproved that they could be the same. Was it developed what the algorithms were, or is that deemed irrelevant? I believe that's deemed irrelevant. And the reason for that, Your Honor, is because the 674 patent itself doesn't even say what the second encryption algorithm is. It just presumes that whatever the encryption is on the wireless link is going to be different than the IPSEC encryption. The entire description of the second encryption step in the 674 patent is just a box in Figure 17. It's just a functional box. So what Intellectual Ventures is doing is they're trying to hold the prior art, Statler, to a higher standard than what their own patents achieve. But Statler says that bulk encryption is preferred, but it never says that it's necessarily bulk encrypted, right? So by not saying what it is, it's difficult to be sure that they're different. Well, Dr. Mikowski said that these are going to be different key spaces. He went into it when he was asked about it at his deposition that's in the Joint Appendix. He said, for one thing, you would have a different key space because you're encrypting different amounts of information at the same time. But I think the other thing to take into account, like I was saying, is that there is no description of any kind of algorithm, any particular algorithm, in the 674 patent. And then what Statler says is it's giving you two options. You could do it bulk encryption or you could do it connection by connection. So it would actually anticipate either option. But the patent, at least, does expressly state that they must be different, which Statler – I'm trying – I mean, I see the argument and I see what you're saying. But I guess the point – their point would be, and I'm sure it will be, that there is an express statement that they must be different in one – in the patent, but not necessarily in Statler. Well, it may come down to what's meant by encryption algorithm. And I think any difference in the two – in the application of the encryption would be a different algorithm. We don't know exactly what a different algorithm means because there's no algorithm described in the 674 specification. But the fact that you're encrypting on a connection-by-connection basis with IPSEC and the fact that you're – as one option, you're encrypting all of the streams together, all the TCP connections together with bulk encryption, that alone is two different encryption algorithms. And Dr. Mikalski, this is at Joint Appendix 2088, he says that they're different and that IPSEC is encrypting on a packet-by-packet basis. Briefly, Your Honor, I just want to touch on the Davis and Rye combination. There, again, IPSEC is the first encryption protocol and WEP is the second encryption algorithm. And, again, you have a IPSEC versus wired equivalent privacy and the WEP wired equivalent privacy. That is an encryption algorithm that is specific to wireless communications. With the issue of determining with Rye, we point to Figure 4 in our brief that clearly shows that IP packets are coming into the wireless hub and they have to be delivered to access points and then on to the end user. This can't happen until an IP address has been established for the end systems. And the claim itself is very broad. The step is determining that the first packet is targeted at the target device. That doesn't even require that the prior has to show that the header information is even being used to perform the targeting. And as far as the delivering goes, the Rye reference actually distinguishes between broadcast communications and unicast communications where you have to determine whether to forward the message on or not. That's it. Column 12 lines 44 to 47. Column 10 lines 55 through 57. Any more questions for this? Any more questions? Thank you, Mr. Matson. Thank you. Mr. Picard. Thank you. If I may, I'd like to turn back to the Stadler issue. My colleague said something interesting on the question of the residual hearsay exception. He said that IEEE is the most reliable source or something to that effect. And I think that's telling. The IEEE probably is the most probative evidence about when this was published, but not the copyright line that IEEE provided. When did the IEEE disseminate this to the public, if ever? So step back. What is the copyright line's purpose? There's an assumption in the board's analysis and in my colleague's argument that the copyright line means it's the date it was published, i.e. made publicly accessible. Well, it's a public date. Was there any effort to establish the exact day, month and day, of the copyright? I would think that burden would be on the challenger. The challenger being Erickson in the case? No, the challenger of the copyright date. No, Your Honor, the burden in the IPR proceedings is on Erickson. They must establish that the copyright date or some other evidence established the Stadler reference as prior art. In fact, in In re Stadler, this court addressed that issue. Is there a shifting burden? The government in Stadler attempted to say, well, we have a registered copyrighted work, and therefore the burden shifted to Lister to disprove that. And this court rejected that kind of approach to dealing with these issues. But there's no doubt that there is a date as to the military communications conference, and there's no dispute that that conference occurred on that date, correct? I don't know what happened when that conference was held. Let's assume, let's stipulate that the conference was held in October of 1998. There's no evidence that the Stadler paper was presented or made available at that conference. That's point one. They're not arguing that the presentation of the paper at the conference established as prior art. What they're arguing is that some subsequent event, the publication of this paper, made it publicly available. The copyright date is not something to signify when a document was distributed to the public. Copyright protection attaches the moment a work is reduced to tangible form. And we don't know in this case whether the IEEE provides a copyright date. For instance, is it the date that the work is received by the IEEE? Is it the date that the author submits it to the IEEE? Erickson and the board simply assume that that date is a publication date, and there's no evidence to support that point. And for that reason, without substantial evidence, it was error for the board to treat that reference as prior art. And it was also error for the board to admit that evidence in the first instance. Without additional questions. Any more questions? That's all. Thank you. Thank you, Your Honors. Thank you, Mr. Picard. Thank you both. The case is taken under submission.